## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

Kerry Dimart Allen, Petitioner

v.                                                    4:11-cv-1676

Rick Thaler, Respondent

**Petitioner Allen's Opposed Motion to Stay Further Proceedings and Hold His
Case in Abeyance Until the United States Supreme Court Decides *Martinez v. Ryan***

TO THE HONORABLE UNITED STATES DISTRICT JUDGE VANESSA GILMORE:

Petitioner Allen, in order to conserve judicial resources, hereby requests this Court to stay

further proceedings in his case until the Supreme Court hands down its decision in *Martinez v.*

*Ryan*.  In support of this motion the petitioner shows the following:

In a complaint filed on May 12, 2000, Allen was charged with capital murder of an

individual under six years of age alleged to have been committed on May 10, 2000. (C.R. Vol.1,

p. 2). Allen was arrested and held without bond; thereafter, he was indicted by a Harris County

Grand Jury on August 24, 2000, in cause number 844387.  On May 5, 2001, Allen was convicted

in cause number 844387 and sentenced to death upon the jury's answers to the special issues.

1

Allen's direct appeal to the Court of Criminal Appeals (CCA) was decided on June 11, 2003.  Allen's state writ was filed on January 8, 2003.  Allen's state writ was pending until April 28, 2010, when the CCA ruled against him.

The Supreme Court released its opinion in the groundbreaking case *Atkins v. Virginia,* 536 U.S. 304 (2002), on June 20, 2002.  In *Atkins,* the Supreme held that it was constitutionally impermissible to execute a mentally retarded offender.  *Id.* at 321.  Petitioner Allen was convicted on May 5, 2001, over a year before the Supreme Court decided *Atkins*, and as such his trial counsel had no authority at the time of trial to show that his client was ineligible for death penalty based upon his mental status.  Undersigned counsel has reviewed the trial counsel's record in this case and has found no indication whatsoever that the trial counsel ever investigated Allen's mental status.

Allen's appointed state habeas counsel did not file his state habeas petition until January 8, 2003, and therefore he could have raised an *Atkins* claim at that time.  In this motion the petitioner intends to make a preliminary showing that state habeas counsel's failure to raise the *Atkins* claim at the state habeas level was due solely to his complete failure to act as an effective habeas attorney.  Indeed, records obtained from the Harris County Auditor's office show that the state habeas counsel never met with Allen, that he did not investigate any claims outside of the trial record, and a review of the state habeas writ establishes that the state habeas counsel did little more than reiterate (and mostly just quote) the issues already raised on the Allen's direct appeal.

Further, it is important to note that the petitioner alleged ineffective assistance during his state habeas proceedings as claim 11 in his writ of habeas corpus filed with this court on May 31,

2

2011; *Allen v. Thaler*; 4:11-cv-01676. (Doc. No. 1). Allen alleged that his inept state habeas counsel failed to raise valid claims of ineffective assistance of both trial and appellate counsel, as well as the *Atkin's* claim previously discussed. Much like the *Atkins* claim, the claims of ineffective assistance of counsel are properly raised, for the first time, at the state habeas level. The reason for this is that it is necessary to develop facts outside of the trial record to proceed with these claims.[1] Further, because of AEDPA's exhaustion requirement, claims not raised in the state courts can not be heard in the federal courts. 28 U.S.C. § 2254(b). In the past, this meant that claims available for the first time during state habeas, which were not raised at that level, were effectively barred from federal review even if the failure to fully exhaust these claims was based entirely on state habeas counsel's failure to provide effective assistance at the state habeas level. *See infra.*

However, the Supreme Court has recently granted certiorari in *Martinez v. Ryan,* to address whether or not a defendant, who has a state-law right to raise a claim available for the first time at the state habeas level, has a federal constitutional right to effective assistance of counsel with respect to such a claim. *Supra.* If the Supreme Court rules in favor of the defendant in this case, the effect would be groundbreaking, and it would allow this Court to consider applicant Allen's claims discussed in this motion. If the Supreme Court rules against

---

1 See *Ex parte Duffy*, 607 S.W.2d 507, 513 (Tex. Crim. App. 1980) which stated:
> Experience has taught us that in most instances where the claim of ineffective assistance of counsel is raised, the record on direct appeal is simply not in a shape, perhaps because of the very alleged ineffectiveness below, that would adequately reflect the failings of trial counsel. Indeed, in a case such as this, where the alleged derelictions primarily are errors of omission de hors the record rather than commission revealed in the trial record, collateral attack may be just the vehicle by which a thorough and detailed examination of alleged ineffectiveness may be developed and spread upon a record.

3

the *Martinez* by finding that there is no right to effective habeas counsel, then most of these claims would be considered defaulted, and the scope of this Court's review of these claims would be greatly limited. Thus, with a eye toward preserving judicial resources, the applicant hereby request this court to stay further proceedings in his case until the Supreme Court hands down its decision in *Martinez*.

### CURRENT STATE OF THE LAW: INEFFECTIVE STATE HABEAS COUNSEL DOES NOT CONSTITUTE CAUSE TO EXCUSE A FAILURE TO EXHAUST CLAIMS

Federal precedent has firmly established that federal district courts should not entertain unexhausted claims raised in writs of habeas corpus. *See Rose v. Lundy,* 455 U.S. 509 (1982). This idea is based on the "interests of comity and federalism [which] dictate that state courts must have the first opportunity to decide a petitioner's claims." *Rhines v. Webber,* 544 U.S. 269, 273 (2005). However, this doctrine was established in the era before AEDPA was enacted when there was no statute of limitations related to the filing of federal habeas petitions. *Id.* at 274. With the enactment of AEDPA came the strict one year statue of limitations on the filling of federal petitions. 28 U.S.C. § 2244(d). In *Rhines,* the Supreme Court recognized the difficulty faced by petitioners when trying to balance the effect of the exhaustion requirement on one hand with the short statute of limitations on the other. After discussing the goals of AEDPA and the role of *habeas corpus* in general, the Court decided that it is proper for district courts to stay and abet federal writs so that unexhausted claims can be presented to the state courts in limited circumstances. *Rhines,* 544 U.S. at 277. The Court decided that it was proper to stay and abet a petitioners claims when: (1) "the district court determines there [is] good cause for the petitioner's failure to exhaust his claims first in state court ;" and (2) the unexhausted claims are

4

potentially meritorious.  *Id.*

Until the recent past Texas Capital Petitioners had a hard time establihsing that they had potentially meritorious claims as required by *Rhines* because the Court of Criminal Appeals refused to hear any writ applications while there was a parallel federal writ pending.  *See Ex Parte Soffar*, 143 S.W. 3d 804, 804 (Tex. Crim. App. 2004).  However, in *Ex Parte Soffar* the Court of Criminal Appeals determined it would consider properly presented subsequent writs if the federal district court had granted a stay of the federal proceedings.  *Id.*  Further, when a petitioner fails to exhaust an *Atkins* claim that was available to him during his state writ, the Court of Criminal Appeals has held "that a state habeas applicant alleging mental retardation for the first time in a subsequent writ application will be allowed to proceed to the merits of his application under the terms of [code of criminal procedure 11.071] Section 5(a)(3)—at least so long as he alleges and presents, as a part of his subsequent pleading, evidence of a sufficiently clear and convincing character that we could ultimately conclude, to that level of confidence, that no rational factfinder would fail to find he is in fact mentally retarded."  *Ex Parte Blue,* 230 S.W.3d 151 (Tex. Crim. App. 2007).  Thus, as long as petitioner Allen can show that he falls under the rubric of the *Atkins* case, then he has a potentially meritorious claim.

The question then becomes whether or not Allen can show good cause for his failure to raise an *Atkin's* claim during his state habeas proceedings.  In Allen's case, the basis of his failure to raise this claim and other possibly meritorious claims during state habeas was the complete failure of his state habeas counsel to provide effective assistance during the state habeas proceedings.  As will be outlined below, a preliminary investigation into the state habeas counsel's actions show that he completely failed to investigate claims outside the record of the

5

trial, and it is possible that he never met with his client.  Unfortunately, established precedent

holds that "ineffectiveness of state habeas counsel furnishes no basis for cause to excuse a

procedural default."  *Hatten v. Quarterman,* 570 F.3d 595, 605 (5th Cir. 2009) (*citing In re Goff,*

250 F.3d 273, 276 (5th Cir.2001)).2  However, signals sent by the Supreme Court, including

their recent grant of certiorari in *Martinez v. Ryan* show that the Court might be ready to reverse

this precedent, at least in cases like the petitioner's, where a potentially meritorious claim was

available to be raised for the first time during state habeas review, and the failure to raise that

claim, attributable to nothing but the ineffectiveness of appointed state habeas counsel,

effectively barred federal review.

**Mr. Allen's Execution Should Be Stayed**

**And His Case Held Pending the Decision in *Martinez v. Ryan***

I.  **MARTINEZ V. RYAN, IN WHICH THE SUPREME COURT GRANTED CERTIORARI ON JUNE 6, 2011, WILL REQUIRE CONSIDERATION OF MR. ALLEN'S CLAIM THAT HIS TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO INVESTIGATE AND PRESENT MITIGATING EVIDENCE IN THE PENALTY PHASE OF HIS TRIAL IF THE COURT RULES IN MARTINEZ' FAVOR**

A.  *Martinez v. Ryan*

On June 6, 2011, the Supreme Court granted certiorari from the Ninth Circuit's decision

in *Martinez v. Ryan*, 623 F.3d 731, 733 (9th Cir. 2010), on the following question:

> Whether a defendant in a state criminal case who is prohibited by state law from raising on direct appeal any claim of ineffective assistance of trial counsel, but who has a state-law right to raise such a claim in a first post-conviction proceeding, has a federal constitutional right to effective assistance of first post-conviction counsel specifically with respect to his ineffective-assistance-of-trial-counsel claim.

---

2 Petitioner reserves the discussion of whether or not this holding properly applies to a person in his position who is raising a valid *Atkins* claim.  It is possible that the application of this holding to claims which if proven would completely bar the imposition of the death penalty is not proper.

Petition for Writ of Certiorari, at i, *Martinez v. Ryan*, No. 10-001.[3]  The facts that led to this

grant of certiorari and the arguments presented to and rejected by the Ninth Circuit make it clear

that if the Supreme Court overrules the Ninth Circuit, the decision will be groundbreaking.

Luis Martinez was convicted in the Arizona state courts of two counts of sexual conduct

with a person under the age of fifteen and sentenced to two consecutive terms of 35 years to life.

*Martinez v. Ryan*, 623 F.3d at 733.  During the pendency of his direct appeal, Martinez' appellate

counsel initiated a state post-conviction proceeding and then informed the courts that, after

review of the trial transcripts and trial file, she could find no colorable claims.  *Id*. at 734.

Martinez was given notice of these matters and provided a short time to file a *pro se* petition for

post-conviction relief.  *Id*.  Martinez failed to file a petition, and the state trial court dismissed his

post-conviction proceeding.  *Id*.

More than a year thereafter, Martinez, represented by new counsel, initiated a second

post-conviction proceeding and filed a petition for post-conviction relief asserting that his trial

counsel provided ineffective assistance.  *Id*.  The trial court dismissed his second post-conviction

proceeding in part because it "deemed Martinez' claims to be procedurally defaulted because he

had failed to raise them in his first . . . action for post-conviction relief."  *Id*.  The Arizona Court

of Appeals affirmed on this ground, and the Arizona Supreme Court denied review.  *Id*.

In federal habeas corpus proceedings, Martinez again asserted his ineffective assistance

of trial counsel claims, but the federal district court denied relief because the claims had been

procedurally defaulted by the state courts.  On appeal to the Ninth Circuit, Martinez argued that

---

[3]The Petition for Writ of Certiorari is set forth in Exhibit 8, and the Supreme Court's order granting
certiorari is set forth in Exhibit 9.

his default should be excused because he was constitutionally entitled to the effective assistance of counsel in state post-conviction proceedings, which provided the first opportunity for him to raise a claim of ineffective assistance of trial counsel.  *Id*.  The Ninth Circuit framed Martinez' argument in the following manner:

> Martinez' allegation of ineffective assistance of appellate [post-conviction] counsel is central to this appeal.  This allegation underpins Martinez' arguments as to both procedural default and _cause and prejudice._  The ineffectiveness of appellate counsel, however, is a relevant and cognizable consideration in this appeal only if Martinez possessed a federal constitutional right to the assistance of counsel in the relevant proceeding for collateral review.

*Id*. at 736.  The Court then considered Martinez' arguments that he had a constitutional right to the assistance of counsel in state post-conviction proceedings.

The Court began by noting that the Supreme Court "has never recognized a federal constitutional right to the assistance of counsel in collateral review proceedings."  *Id*. (citing *Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987); *Coleman v. Thompson*, 501 U.S. 722, 755 (1991); and *Murray v. Giarratano,* 492 U.S. 1, 7–8 (1989)).  The Court then explained that

> Martinez recognizes the general rule that _there is no right to counsel in state collateral proceedings,_ see *Coleman,* 501 U.S. at 755, but asserts that there might be an exception where _state collateral review is the first place a prisoner can present a challenge to his conviction._ 501 U.S. at 755.

623 F.3d at 736.[4]

---

[4]In *Coleman*, the Court acknowledged a potential access to courts problem for prisoners whose post-conviction counsel's ineffectiveness prevented review of claims, such as ineffective assistance of trial counsel, that can only be presented the first time in a post-conviction proceeding:

> We reiterate that counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation.  *Finley* and *Giarratano* established that there is no right to counsel in state collateral proceedings.  For Coleman to prevail, therefore, there must be an exception to the rule of *Finley* and *Giarratano* in those cases where state collateral review is the first place a prisoner can present a challenge to his conviction.

501 U.S. at 755.  The Court then decided that it did not need to address this issue in Mr. Coleman's case, because he

Martinez based his argument that he had a right to the assistance of counsel in state post-conviction proceedings on two cases, *Douglas v. California*, 372 U.S. 353 (1963), and *Halbert v. Michigan*, 545 U.S. 605 (2005).  *Douglas* held that an indigent criminal defendant is entitled to the assistance of counsel in his first appeal of right in state court.  372 U.S. at 355–56.  *Halbert* involved a system of appellate review in Michigan for people who are convicted by guilty pleas or pleas of *nolo contendere*. 545 U.S. at 609.  Such persons were required to seek leave to appeal and if leave was granted, could then proceed with an appeal of right.  *Id*. at 612.  Indigent defendants were not entitled to counsel in seeking leave to appeal.  *Id*.  In deciding whether such defendants were entitled to the assistance of counsel in seeking leave to appeal, the Court explained that the issue was "framed by two prior decisions of this Court concerning state-funded appellate counsel, *Douglas* and *Ross [v. Moffitt*, 417 U.S. 600 (1974)]."  545 U.S. at 616.

Because these two decisions and the Supreme Court's analysis of them in *Halbert* are critical to understanding the Ninth Circuit's analysis in *Martinez v. Ryan*—and, to understanding the grant of certiorari in *Martinez*—it is necessary to examine the Supreme Court's explanation of *Douglas* and *Ross* in *Halbert*.  With respect to *Douglas*, the *Halbert* Court explained:

> Two considerations were key to our decision in *Douglas* that a State is required to appoint counsel for an indigent defendant's first-tier appeal as of right.  First, such an appeal entails an adjudication on the _merits._  372 U.S. at 357.  Second, first-tier review differs from subsequent appellate stages _at which the claims

---

did obtain post-conviction review in the state trial court:

> We need not answer this question broadly, however, for one state court has addressed Coleman's claims:  the state habeas trial court.  The effectiveness of Coleman's [habeas] counsel before that court is not at issue here.  Coleman contends that it was the ineffectiveness of his counsel during the appeal from that determination that constitutes cause to excuse his default.  We thus need to decide only whether Coleman had a constitutional right to counsel on appeal from the state habeas trial court judgment.  We conclude that he did not.

*Id*.

have once been presented by [appellate counsel] and passed upon by an appellate court._  *Id.* at 356.  Under the California system at issue in *Douglas,* the first-tier appellate court independently examined the record to determine whether to appoint counsel.  *Id.* at 355.  When a defendant able to retain counsel pursued an appeal, the *Douglas* Court observed, _the appellate court passe[d] on the merits of [the] case only after having the full benefit of written briefs and oral argument by counsel._  *Id.* at 356.  In contrast, when a poor person appealed, _the appellate court [wa]s forced to prejudge the merits [of the case] before it c[ould] even determine whether counsel should be provided._  *Ibid.*

545 U.S. at 611.  By contrast,

> In *Ross,* we explained why the rationale of *Douglas* did not extend to the appointment of counsel for an indigent seeking to pursue a second-tier discretionary appeal to the North Carolina Supreme Court or, thereafter, certiorari review in this Court.  The North Carolina Supreme Court, in common with this Court we perceived, does not sit as an error-correction instance.  417 U.S. at 615.  Principal criteria for state high court review, we noted, included _whether the subject matter of the appeal has significant public interest, whether the cause involves legal principles of major significance to the jurisprudence of the State, [and] whether the decision below is in probable conflict_ with the court's precedent.  *Ibid.* (internal quotation marks omitted).  Further we pointed out, a defendant who had already benefited from counsel's aid in a first-tier appeal as of right would have, _at the very least, a transcript or other record of trial proceedings, a brief on his behalf in the Court of Appeals setting forth his claims of error, and in many cases an opinion by the Court of Appeals disposing of his case._  *Ibid.*

545 U.S. at 611–12.  The Court then held "that *Douglas* provides the controlling instruction."  *Id.*

at 616–17. The Court explained:

> Two aspects of the Michigan Court of Appeals' process following plea-based convictions lead us to that conclusion.  First, in determining how to dispose of an application for leave to appeal, Michigan's intermediate appellate court looks to the merits of the claims made in the application.  Second, indigent defendants pursuing first-tier review in the Court of Appeals are generally ill equipped to represent themselves.

*Id*.

Martinez argued that his case was more like *Douglas* and *Halbert* than *Ross*.  As the

Ninth Circuit recounted Martinez' argument:

10

> Martinez asserts a right to counsel in collateral review insofar as that is the first
> opportunity to obtain review of his ineffective-assistance-of-trial-counsel claim.
> Under Arizona law, collateral review proceedings are the first point at which an
> ineffective assistance of counsel claim may be presented for review.  *State v.
> Spreitz,* 202 Ariz. 1, 39 P.3d 525, 527 (2002) . . . .  Therefore, Martinez' initial
> Rule 32 [post-conviction] action was the first opportunity for him to obtain review
> of the effectiveness of his trial counsel.  Martinez argues that his claim is thus
> comparable to that considered in *Halbert* and *Douglas.*  He makes three primary
> arguments: (1) collateral review presented _the first point (_tier_) at which state
> law permitted [him] to raise any ineffective-assistance-of-trial- counsel claim,"
> (2) Arizona courts would review his ineffective-assistance-of- trial-counsel claim
> asserted in the first post-conviction relief proceeding on the merits, and (3)
> defendants are _ill equipped to represent themselves in pursuing first-tier review
> of such claims._

623 F.3d at 739.

The Ninth Circuit recognized that while "[a] general right to counsel on collateral review

cannot be extrapolated from *Halbert* and *Douglas*[,]" *id.* at 740,

> [t]he more difficult question . . . is whether collateral review might constitute the
> "first tier" of review for a petitioner's ineffective-assistance-of-trial-counsel claim,
> and thus be sufficient to give rise to a right to counsel.  That is, if collateral
> review entails a determination on the merits of an ineffective assistance of counsel
> claim, can collateral review represent the first opportunity for a criminal
> defendant to obtain review of his conviction, such that Martinez is similarly
> situated to a defendant pursuing his first appeal as of right?

*Id.*  The Ninth Circuit held that because collateral proceedings are more of a "second tier"

review, Martinez was not entitled to the assistance of counsel.  The Court's reasoning was as

follows:

> This case is more like *Ross* than *Halbert.*  In *Ross,* the petitioner had already
> received direct review of his convictions, and had already received the assistance
> of counsel in connection with that first appeal.  Likewise, here, Martinez has
> already received direct review of his conviction and received the assistance of
> counsel in connection with that appeal.  In *Halbert,* by contrast, the petitioner
> sought the functional equivalent of direct review, the first appeal of his
> conviction.  Even if collateral review presents the first tier of review for Martinez'
> ineffective assistance of counsel claim, we conclude that Martinez' action is not
> analogous to a direct appeal—or the *first* opportunity for him to obtain review of

11

his conviction—so as to entitle him to effective counsel.  We therefore conclude that Martinez' case is not governed by *Douglas* and *Halbert.*

. . . .

*Ross's* and *Halbert's* analyses of second-tier review applies to the context of collateral review presented in this case.  Collateral review is more like a second-tier appeal than a first-tier appeal as of right.  Collateral review and direct review are not on equal footing where, as here, a defendant has already benefitted from the assistance of counsel in a direct appeal.  In collateral review proceedings, Martinez does not face the same burden and disadvantages as a defendant pursuing direct review without the assistance of counsel.  Even though collateral proceedings might provide the first tier of review for a particular claim, Martinez has already benefitted from the assistance of counsel in his first appeal.

623 F.3d at 740–41.

Thus, the Ninth Circuit believed that the constitutional requirement of counsel for first tier review applies only to whole cases, not to specific issues.  In granting certiorari, at least four members of the Supreme Court disagreed with, or at least seriously questioned, this analysis.[5]  Accordingly, the Supreme Court's decision in *Martinez* could well overturn the Ninth Circuit's decision.  The consequences of such a decision will be groundbreaking.

>   **B.      If the Supreme Court Reverses the Ninth Circuit Decision in *Martinez,* the holding will allow the petitioner to raise the claims previously considered defaulted based on state habeas counsel's deficient performance.**

It is clear that the Supreme Court's decision in *Martinez* will have a great effect on the claims which Allen is able to raise, and his ability to receive funding to investigate those claims. That is, so long as he can establish a prima facie case of ineffective state habeas counsel.  In order to this, the petitioner will explain how his state habeas counsel failed to comply with the "Duties of Habeas Corpus Counsel" as identified by the State Bar of Texas' Guidelines and Standards for Texas Capital Counsel.  (available at http://www.texasbar.com/Content/NavigationMenu/ForLawyers/Committees/TexasCapitalGuidelines.pdf).

The Texas State Bar, in identifying the duties of capital habeas counsel, identified one duty as follows:

>   Habeas corpus counsel cannot rely on the previously compiled record, but must conduct a thorough and independent investigation. Specifically, habeas counsel cannot rely on the work of, or representations made by, prior counsel to limit the scope of the post-conviction investigation. Counsel must not assume that the trial record presents either a complete or accurate picture of the facts and issues in the case.

*Id.* at 30.  Further, the State Bar has also stated that state habeas "counsel has a duty to conduct a

---

[5]As the Supreme Court has explained, the Court follows the "Rule of Four," in that if only four of the nine Justices vote to grant certiorari, certiorari is granted.  *See, e.g., New York v. Uplinger*, 467 U.S. 246, 249–51 (1984) (Stevens, J., concurring) (explaining the Rule of Four).

13

searching inquiry to assess whether any constitutional violations may have taken place." *Id.* The State Bar also directs that "without exception, habeas corpus counsel has a duty to meet the capital client face-to-face as soon as possible" and that the counsel, or another member of his team "should make every effort to establish a relationship of trust with the client."

Records obtained from the Harris County Auditor's office affirmatively show that state habeas counsel completely failed to perform any of the above mandated duties. *See* Exhibit A. According to these records, of the more than 228 hours spent by the state habeas attorney on the state writ, *none of these hours were spent visiting with, or interviewing the client*. This would explain why the state habeas counsel did not think to investigate whether the applicant's death sentence was unconstitutional under *Atkins*. Further it would explain why that counsel failed to raise any claims related to *Wiggins* (ineffective assistance of counsel at the punishment stage). It appears that the only interaction the state habeas counsel had with his client was through an investigator who visited petitioner Allen once, in relation to a record based jury claim. *See* Exhibit A.

Based on the records in Exhibit A, it is clear that the state habeas counsel was not acting as an effective habeas attorney. He spent no time investigating claims outside of the record. He spent a total of 228.75 hours working on his state writ (not including time printing the writ). *Id.* Of that time 172.5 Hours were spent on research and writing, and 56.25 hours were spent reading the record. This is what one would expect from a direct appeal counsel, not a habeas attorney.

This point is driven home by the State Bar of Texas' first enumerated "general responsibility" of habeas counsel, which states:

> a. Habeas corpus counsel must understand that the state habeas corpus proceeding is not a second direct appeal. Direct appeal-like, record-based claims are not cognizable in state habeas corpus and can be fatal to the capital client. Counsel should not accept an appointment if he or she is not prepared to undertake the

14

comprehensive extra-record investigation that habeas corpus demands.  (Id. at 30) State Bar of Texas' Guidelines and Standards for Texas Capital Counsel at 30.  However, this principle was not followed by the applicant's state level habeas counsel who based his entire writ on the appellate record.

The state writ (authored by Stephen Morris) runs over 800 pages yet contains little of substance.  Morris drafted all of the pleadings and findings of facts, but took a new job position with the Harris County District Attorney's Office before the writ was decided.  Harris County is, of course, the same DA's office which was prosecuting the state writ at the time.

Strikingly, the quasi-substance in the state writ authored by Morris appears to have been 'copied-and-pasted' from the state direct appeal (authored by Allen Isbell).  For example, Isbell's point number one read, "The Trial Court Abused Its Discretion in Denying Appellant's Challenge to Gordon Arthur Berg In That His Views Would Prevent And Substantially Impair the Performance of His Duties as A Juror In Considering the Mitigation Issue."

Similarly, Morris's Claim for Relief Number 17 reads, "The Trial Court Abused its Discretion in Denying Appellant's Challenge to Gordon Arthur Berg in That His Views Would Prevent and Substantially Impair the Performance of His Duties as a Juror in Considering the Mitigation Issue."

Each and every other one of the arguments made by Mr. Isbell (in the direct appeal) were quoted in full by Mr. Morris (in the habeas brief).

**C.**      **Preliminary Investigation Indicates That Mr. Allen Has a Potentially Meritorious Claim of Ineffective Assistance of Trial Counsel and State Habeas Counsel.**

Undersigned counsel, through their initial investigation, were surprised by the almost complete absence of investigation into Mr. Allen's past.  Other than interviewing Allen and one

15

of his sister's, Mr. Allen's current counsel have not found any indication that a proper investigation was conducted concerning Mr. Allen's past. This is very surprising because both the trial counsels, and state habeas counsel had information showing that Mr. Allen was severely mentally and sexually abused by family members and strangers alike while growing up. Indeed, at the trial itself, during the punishment phase, the petitioner's prior wife testified that the petitioner was himself molested by his uncle when he was a child. *See* Court R. Rec. Vol. 26 at 150-160. Another defense mitigation witness, Bobby Austin, testified that he had been told by the petitioner that he was conceived as a result of his mother being raped. *See* Court R. Rec. Vol. 27 at 113-120. Finally, Bettina Wright, a clinical social worker testified that the petitioner had reported being chronically sexually abused as a child, by people such as his brother, uncle, mother's boyfriends, and strangers. *See* Court R. Rec. Vol. 28 at 4-20. However, despite this evidence no extrinsic evidence of this abuse was presented at trial, and not a single member of the petitioner's family was called to testify.

The fact that this information was not properly addressed at trial was only compounded by the state habeas counsel's complete failure to investigate any claims beyond the record of the trial. More investigation is necessary to fully develop this claim, and the undersigned counsel believes that the assistance of a mitigation specialist would be required to properly investigate this claim. Of course, in order to make a showing that the appointment of a mitigation specialist is reasonable necessary, the undersigned counsel must first establish that this court can reach the merits of this claim. It is for this reason that this court should stay further proceedings until the Supreme Court releases their decision in *Martinez*.

      **C.**      **Preliminary Investigation Also Indicates That Mr. Allen Has a Potentially Meritorious *Atkins* Claim Which was not Raised because of Ineffective Assistance of State Habeas Counsel**

16

To successfully prove mental retardation, a petitioner must show that he has (1) significant sub-average intellectual functioning; (2) accompanied by related limitations in adaptive functioning; and (3) onset prior to the age of eighteen. *Taylor v. Quarterman*, 498 F.3d 306, 307 (5th Cir.  2007) (citing *Atkins v. Virginia*, 536 U.S. 304, 318  (2002)). The American Association on Mental Retardation (AAMR) defines mental retardation as a disability characterized by significant limitations both in intellectual functioning and in adaptive behavior as expressed in conceptual, social, and practical adaptive skills. American Association on Mental Retardation, Mental Retardation: Definition, classification, and Systems of Supports 5 (10th ed. 2002) [hereinafter "2002 AAMR Manual"]. The disability originates before the age of eighteen. Id.  The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR") employs a definition that is nearly identical to the one set out in the 1992 AAMR Manual and that is consistent with that set out in the 2002 AAMR Manual

Although the undersigned counsel has not had the assistance of a mental health expert as of yet, preliminary investigation, based mostly on meetings with the petitioner and the trial record, show that the petitioner has a potentially meritorious *Atkins* claim which would bar the imposition of the death penalty in his case.  To support this claim the petitioner shows as follows:

- It is apparent from the trial transcripts that the petitioner's trial counsel was aware of past sexual abuse suffered by the petitioner at the hands of both family and strangers. Further it is apparent that petitioner's trial counsel were aware that the petitioner had knowledge that his biological father raped his mother, leading to the petitioner's birth. R.R. Vol. 28 at 3-19.  Further, it was noted by a the defence witnesses called at the punishment stage that the petitioner rarely held a job, (R.R. Vol. 26 at 120-30) and was not able to help around the house (*Id.* at 184-90).
- After only a few visits with the petitioner, undersigned counsel has uncovered information which raises concerns that Petitioner is mentally retarded within the meaning of *Atkins v. Virginia.*   This information includes petitioner's poor performance in public schools (petitioner constantly performed poorly in school, did not graduate, and had to repeat multiple grades), petitioner still counts using his

17

fingers, is currently only able to 'pass' GED classes because he is allowed unlimited time to complete answers and has to constantly refer to books, his inability to hold a job, and the lack of friends his own age. These facts lead the undersigned counsel to believe that Mr. Allen has a clear history of extensive intellectual and adaptive functioning limitations. The undersigned counsel is not qualified to make the decision of whether these traits are related to mental retardation, but believes that a trained Neuropsychologist could assist in developing possible reasons for the traits.

• Petitioner's state habeas counsel does not have any files related to this case, and apparently did not investigate any claims outside the trial record.

In order to properly investigate this claim the services of trained mental health professional are required. Of course, as is the case with the potential ineffective assistance of counsel claim mentioned above, funding for such a professional would not be available unless this Court has the ability to reach the merits of this claim. The importance of the *Martinez* decision is therefore obvious, and this Court should stay further proceedings until the Supreme Court hands down their decision in this case.

## Conclusion and Prayer for Relief

The Petitioner believes that he has made a preliminary showing that he received ineffective assistance of counsel during his state habeas proceedings, and that this ineffective assistance led to two possibly meritorious claims being defaulted. Further, because the Atkin's decision was not available at the time of the petitioner trial, and because ineffective assistance of counsel claims are properly raised during habeas corpus proceedings, failure to raise these claims effectively barred any court from reviewing these claims. It is for these reasons that the Supreme Court's upcoming decision in *Martinez* is so important to the outcome of this case. In the event the Supreme Court rules in *Martinez's* favor, this court would no doubt have the ability to rule on both of these claims, or at a minimum, would be able to grant a stay an abeyance so that these claims could be litigated in state court before returning to federal court. If the Supreme Court rules against *Martinez*, then this courts review in the petitioner's case will be greatly limited. By

granting a stay from the date this motion is filed until the date the Supreme Court decides the *Martinez* case, this court will conserve judicial resources by only applying those resources to claims which the petitioner can successfully raise.

For the foregoing reasons, the petitioner respectfully asks this court to stay further proceedings and hold his case in abeyance until the Supreme Court hands down their decision in *Martinez.*

Respectfully submitted,

LAW OFFICE OF SETH KRETZER
Two Post Oak Central
1980 Post Oak Blvd.
Suite 1900
Houston, TX 77056
(713) 775-3050 (work)
(713) 623-0329 (FAX)

seth@kretzerfirm.com

\_\_\_\_\_/s/_____
Jonathan Landers, Attorney for Petitioner Allen
State Bar No. 24070101
2813 W T.C. Jester
Houston Texas 77018
PH: 713-301-3153
FAX: 713-685-5020

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing motion was served on all counsel of record by filing on the ECF System on this 30th day of July, 2011.

_____
Seth Kretzer

19

**CERTIFICATE OF CONFERENCE**

I certify that on the 28th day of July, 2011, I communicated with Tommee Heining in the Office of the Texas Attorney General.  Ms. Heining is opposed to the relief requested in this motion.

_____

Seth Kretzer